IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| PAMELA JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. MO:19-CV-00155-DC |
| | § | |
| L'ORÉAL USA S/D, INC.; | § | |
| GARNIER LLC; and WALGREEN CO., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants L'Oréal USA S/D, Inc., Garnier LLC, and Walgreen Co. (collectively, "Defendants") are entitled to summary judgment on Plaintiff's claims, which arise from allegations she suffered a painful skin reaction after dying her hair with a Garnier Nutrisse Ultra Color "BL21 Blue/Black" hair color kit (the "Product"). As described below, the Product was accompanied by robust, FDA-mandated cautionary labeling addressing the very same health condition Plaintiff experienced. Plaintiff concedes she did not read those warnings. Nor did she follow instructions to conduct a "skin test" prior to use. Moreover, although her expert designation deadline expired in June, Plaintiff has not tendered any expert to support critical elements of her claims.

This Court should grant Defendants' Motion for several reasons, including:

- "[P]roduct liability cases are quintessentially expert cases." *Emery v. Medtronic, Inc.*, 793 F. App'x 293, 296 (5th Cir. 2019). But Plaintiff has not designated any expert to support of her contentions that the Product was defective or the purported defect caused her injuries. Without such testimony, her product liability claims fail as a matter of law;

- Plaintiff neither read nor heeded the Product's safety warnings, which adequately advised users about the risk of a skin reaction and provided specific instructions to mitigate or avoid that risk. Moreover, even assuming some warning deficiency, Plaintiff's failure to read and follow the labeling negates the key element of causation;

- Plaintiff has no viable evidence of a "safer alternative design" to support her design defect theory as required by the Texas Products Liability Act; and

- Plaintiff's breach of warranty, fraud, unjust enrichment, Deceptive Trade Practices Act, and Magnusson-Moss Warranty Act claims fail as a matter of law.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Pamela Johnson purchased the Product on July 7, 2017 from her local Walgreens in Odessa, Texas. (Compl. [Doc. 1] at ¶ 11). The following day, Plaintiff and her daughter applied the color to Plaintiff's hair without first reading the warnings contained in the Product's package insert or performing the skin test recommended by the packaging and instructions. (*See id.* at ¶ 12; Deposition of Pamela Johnson ("Pl. Dep.") at 42:18-47:17, Appendix ("App.") 13-18). Plaintiff claims she thereafter experienced personal injuries, including "pain, burning, itching and blistering to her scalp, ears, and where the color dripped down her neck." (Compl. at ¶13).

Plaintiff's lawsuit asserts the Product is unreasonably dangerous, negligently marketed and designed, is unmerchantable, and "contains caustic ingredients" that can cause injury in some consumers. (*See* Compl. at ¶¶ 17-94). Among the purportedly offending "ingredients," Plaintiff singles out p-Phenylenediamine – or "PPD" – which can cause "skin sensitization" and an allergic reaction. (*Id.* at ¶¶ 28(a), 29-31, 49-89). Plaintiff claims Defendants are liable for her injuries under theories of negligent failure to warn, negligent design, breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act ("MMWA"), violation of the Texas Deceptive Trade Practices Act ("DTPA"), unjust enrichment, and fraud. (*Id.* at ¶¶ 95-160).

### A.    The Product's Labeling Warns Users About Potential Allergic Reactions and Skin Irritation, and Directs Them to Conduct a Skin Test Before Use.

The Product's packaging and instructions include advisories addressing appropriate use of the Product. Like all hair-dye products sold in the United States, those materials include cautionary information about possible "allergic reaction[s]" and "skin irritation," as well as detailed instructions on how to conduct a skin test before each use. *See* 21 U.S.C. § 361(a) (requiring hair dyes contain cautionary information and instructions to conduct preliminary test).

        1.     ***The Product's Box***

The top of the Product's box warns: "**HAIRCOLOR CAN CAUSE AN ALLERGIC REACTION**." (App. 28).[1] Beneath is a message stating, "**IMPORTANT: FOLLOW THE USAGE ADVISORY**," with an arrow pointing to the following "**USAGE ADVISORY-SAFETY WARNINGS**" on the box's side panel:



(App. 28). That panel also provides:



(*Id.*). The panel concludes with a direction to "**READ AND FOLLOW THE INSERT**." (*Id.*).

Upon opening the top flap of the box, the following message is presented in a bolded and boxed format on a white background:



(*Id.*). The box also has a heading that asks, "**Questions?**", followed by a telephone number and website in order to contact Garnier Nutrisse "color consultants to help you." (*Id.*).

---

[1] Plaintiff threw away the hair dye's packaging and instructions after she used it. (Pl. Dep. at 39:18-22, App. 12). But Plaintiff identified the Product as what she used. (*Id.* at 35:13-36:13, App. 8-9). She also returned to the Walgreens on July 26, 2017 and purchased another box of the same Product. (*Id.* at 82:19-84:14, App. 22-24). The packaging and instructions accompanying that purchase are identical to those excerpted herein. (*See* Pl's Resp. to 2nd Req. for Prod. at RFP 29 & PLAINTIFF 0207, App. 30-36].

###   2.   *The Product's Contents*

Inside the box are six items: (1) a bottle of "Nourishing Creame Developer," (2) a tube of "Nourishing Color Creme," (3) a package of "fruit oil concentrate," (4) a bottle of "Conditioner," (5) a pair of disposable gloves, and (6) an 11-inch by 17-inch, multi-colored package insert (the "Insert"). (Deposition of Christell Johnson ("C. Johnson Dep.") at 31:18-34:11, App. 41-44). The Insert includes step-by-step instructions for preparing and coloring hair in both English and Spanish. (App. 53-54). At the top left of the Insert, in white text on a dark green background, the user is advised: "**Before using this product, you must read all Usage Advisory-Safety Warnings and follow application instructions carefully**." That message is immediately followed by the following warnings:



(*Id.* at 54). The Insert advises that "**THIS PRODUCT CAN CAUSE AN ALLERGIC REACTION, WHICH, IN CERTAIN RARE CASES, CAN BE SEVERE**." It then includes instructions regarding how to conduct a "SKIN ALLERGY TEST", which should be performed "48 HOURS BEFORE EACH USE OF THIS PRODUCT, EVEN IF YOU HAVE ALREADY USED THIS OR ANOTHER HAIRCOLOR PRODUCT":

4

SKIN ALLERGY TEST
IMPORTANT: THIS PRODUCT CAN CAUSE AN ALLERGIC REACTION, WHICH, IN CERTAIN RARE CASES, CAN BE SEVERE, TO HELP MINIMIZE THE RISK OF AN ALLERGIC REACTION, YOU MUST FOLLOW THESE PRECAUTIONS.
DO NOT USE IF:
• You have already had a reaction to a haircolour product.
• You have a sensitive, itchy or damaged scalp.
If you have a tattoo, the risk of an allergic reaction may be increased.
PERFORM A SKIN ALLERGY TEST 48 HOURS BEFORE EACH USE OF THIS PRODUCT, AS ALLERGIES CAN DEVELOP SUDDENLY, EVEN IF YOU HAVE PREVIOUSLY USED A HAIRCOLOR PRODUCT FROM THIS BRAND OR ANOTHER.
SKIN ALLERGY TEST INSTRUCTIONS:
• Clean an area the size of a quarter in the bend of your elbow with soap and water. Pat dry.
• Pierce the Nourishing Color Creme tube (B) using the pointed tip of its cap. Do not squeeze or put pressure on color cream tube until you have pierced the tube opening completely.

• Using a plastic utensil, mix a dab of Nourishing Color Creme (B) with a few drops of the Nourishing Creme Developer (A) (the ratio should be 1 part Color Creme to 1½ parts Developer) in a plastic or glass container. Tightly recap the haircolor product and Developer. Do not use metal utensils.
• Apply mixture to the test area with a cotton swab or ball.
• Let test spot dry. Do not wash, cover or disturb for 48 hours.
• Examine test area periodically over the next 48 hours. If you experience any reactions – such as redness, burning, itching, swelling, skin abrasions, eruptions or irritation in or around the test area, DO NOT COLOR YOUR HAIR UNTIL YOU CONSULT A DOCTOR.

(*Id.*). The insert then continues with the following warnings:

IMPORTANT WARNINGS
• IN CASE OF A REACTION WHILE COLORING HAIR, such as stinging, rash or burning sensation on scalp, rinse immediately and discontinue use. IF YOU EXPERIENCE DIFFICULTY BREATHING, TIGHTNESS OF CHEST AND/OR HIVES OR SWELLING AT ANY PLACE ON THE BODY, DISCONTINUE USE AND OBTAIN MEDICAL ASSISTANCE IMMEDIATELY. BEFORE COLORING AGAIN, CONSULT A DOCTOR.
• IN RARE CASES, THE USE OF HAIR COLORANTS HAS BEEN ASSOCIATED WITH SKIN DEPIGMENTATION (SKIN WHITENING OR LOSS OF COLOR). THIS MAY BE TEMPORARY OR PERMANENT. IF YOU NOTICE ANY SKIN DEPIGMENTATION OR ALLERGIC REACTION SUCH AS PAIN OR SEVERE ITCHING, DISCONTINUE USE IMMEDIATELY.

(*Id.*). Like the box, the Insert also includes a heading that states, "Questions? Talk to your Nutrisse consultant toll free from anywhere in the continental US. 1-800-442-7643. Or visit www.garnierUSA.com to view our easy how-to application videos." (*Id.*).[2]

## B.    Plaintiff's Prior Use of the Product

Plaintiff has used hair color products since 1983 because she "didn't want to see [her] gray." (Pl. Dep. at 23:5-12, App. 4). She started using Garnier Nutrisse in the mid-1980s because she was familiar with the brand and her sister recommended the Product. (*Id.* at 27:14-20, 37:21-

---

[2] The tube of "Nourishing Color Creme" also carried a boxed "**USAGE ADVISORY-SAFETY WARNING.**" (App. 55). That warning advises: "**CAN CAUSE AN ALLERGIC REACTION (SKIN ALLERGY TEST: SEE INSERT)**," and instructs users to perform the skin allergy test (*Id.*).

38:1, App. 5-11). Since that time, Plaintiff has never researched the Product or looked it up on the internet, and has never been to the L'Oréal website. (*Id.* at 38:16-39:1, App. 11-12). Instead, Plaintiff explained she continued to buy and use the Product between the mid-1980s through July 2017 simply because "I loved it," and "[i]t did my hair so perfect and it made me look good." (*Id.* at 38:2-5, App. 11). Although she saw advertisements from time-to-time for the Product, they did not affect her decision to purchase it. (*Id.* at 39:2-15, App. 12). She continued to buy it for no other reason than she "[j]ust liked it" based on prior use. (*Id*. at 38:2-8, 39:12-17, App. 11-12).

### C. Plaintiff Did Not Read the Product's Insert or Follow the Skin Test Instructions.

Plaintiff recalls that, at some point, she read information on the box that "hair color can cause an allergic reaction" that "can be severe", and that a skin test should be performed 48 hours before "each use of this product." (Pl. Dep. at 42:18-44:2, App. 13-15). But Plaintiff never performed a skin test. (*Id.* at 28:17-29:17, 44:3-4, 47:5-17, App. 6-18). She confirmed she understood that the test involved mixing developer solution and color and placing it on the inside of her elbow. (*Id.* at 29:3-15, App. 7). Plaintiff also acknowledged that "that's what the box says" to do. (*Id.* at 44:15-17, App. 15). But Plaintiff reasoned it was unnecessary for her to "test it out" because "[m]y aunt was a beautician, and she never did … a skin test…." (*Id.* at 44:10-17).

Plaintiff never read the Insert's additional safety warnings. (*Id*. at 44:18-47:17, App. 15-18).[3] Although she admitted that the Insert includes advisories to conduct a skin test "before each use of this product, even if you have used this or another hair color product" and that "allergies

---

[3] Plaintiff's daughter, Christell Johnson, testified that she has been helping her mother color her hair since the mid-1990s. But like Plaintiff, she did not read the Product's Usage-Advisory-Safety Warnings. (C. Johnson Dep. at 31:17-32:14, 34:1-35:5, 61:9-64:8, App. 41-49). She also confirmed that she did not conduct a skin test before helping color Plaintiff's hair. (*Id*. at 26:13-17, 35:6-9, 61:20-64:8, App. 40-49).

can develop suddenly, even if you have … previously used a hair color product from this brand or another," Plaintiff did not read or follow those instructions. (*Id*. at 45:22-47:17, App. 16-18).

### D.     Plaintiff's Skin Reaction

Plaintiff began feeling pain and burning on her head shortly after starting to color her hair on July 8, 2017. (Compl. at ¶ 13). She later developed swelling and blisters in those areas. (*Id.*). Seven days after first experiencing that reaction, Plaintiff went to the Emergency Room at Medical Center Hospital, where health care providers diagnosed her as having had an "acute localized allergic reaction" and "secondary bacterial infection." (Pl. Dep. at 69:11-71:15, App. 19-21).

## II.     SUMMARY JUDGMENT STANDARDS

"The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one whose resolution would "affect the outcome of the suit under governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once a motion for summary judgment has been filed, the non-moving party may not rest on mere allegations or denials in pleadings, but must present affirmative proof establishing the existence of a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Conclusory allegations, unsubstantiated assertions, or the mere existence of a non-material factual dispute cannot satisfy this burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.   ARGUMENT AND AUTHORITIES

Plaintiff is unable to meet her burden of proof as to any of the claims she asserts against Defendants. Summary judgment therefore is required.

### A.   Plaintiff Lacks Expert Testimony Necessary to Establish Her Claims.

A product liability plaintiff may pursue several legal theories under Texas law, including strict products liability, negligence, and breach of warranty claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2); *Garrett v. Hamilton Controls, Inc.*, 850 F.2d 253, 255 (5th Cir. 1988); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 423 (Tex. 1984). But regardless of the theory alleged, the plaintiff must prove both causation and product defect. *See Ethicon Endo-Surgery, Inc. v. Gillies*, 343 S.W.3d 205, 211 (Tex. App.–Dallas 2011, pet. denied) ("Whether a plaintiff seeks recovery because of negligence or strict liability in tort, the burden is on the plaintiff … to prove that the injury resulted from a defect in the marketing of the product." (citation omitted)); *see also Samuell v. Toyota Motor Corp.*, No. MO-13-CV-47, 2015 U.S. Dist. LEXIS 54495, at *10-*21 (W.D. Tex. Apr. 27, 2015) (recognizing state-law product liability theories of strict liability, negligence, breach of warranties, and fraud/misrepresentation required objective proof that product defect caused the injury).

A negligence action in the product liability context requires the plaintiff to establish (1) the defendant owed a duty of care in the design, marketing, or sale of the product, (2) a breach of the applicable standard of care, (3) an injury, and (4) a causal connection between the breach of care and injury. *See Gillies*, 343 S.W.3d at 211. Strict liability allegations – whether based on the design, manufacturing, or marketing of a product – require proof of (1) a product defect; (2) that existed at the time the product left the manufacturer's hands; (3) make the product unreasonably dangerous; and (4) was a producing cause of the plaintiff's injuries. *Parsons v. Ford Motor Co.*,

85 S.W.3d 323, 329 (Tex. App.–Austin 2002, pet. denied). In other words, "[p]roducts liability focuses on the product; negligence focuses on the supplier's conduct." *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 181 (Tex. 2004). But *both* legal theories necessitate proof of a specific defect that caused the injury. *See Garrett*, 850 F.2d at 256-57. The same is true for fraud and breach of warranty claims.[4] *See Mack Trucks v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006) ("Producing or proximate cause is an element of all of the [plaintiffs] claims, which included negligence, misrepresentation, breach of warranty, and design, manufacturing, and marketing defects."); *accord Wile v. Abbott*, No. 3:18-CV-03221-E, 2020 U.S. Dist. LEXIS 82009, at *6-*7 (N.D. Tex. May 8, 2020); *Andrews v. Dial Corp.*, 143 F. Supp. 3d 522, 527-28 (W.D. Tex. 2015); *Samuell*, 2015 U.S. Dist. LEXIS 54495, at *10-*21.

### 1. *Expert testimony is necessary to support each of Plaintiff's legal theories.*

A Texas product liability plaintiff generally must present expert testimony to prove product defect and causation. *See Emery v. Medtronic, Inc.*, 793 F. App'x 293, 296 (5th Cir. 2019) (recognizing that "product liability cases are quintessentially expert cases."); *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42 (Tex. 2007) (explaining "expert testimony is generally encouraged if not required to establish a products liability claim."). Under Texas law, "[e]xpert testimony is required when an issue involves matters beyond jurors' common understanding." *Tamez*, 206 S.W.3d at 583 (citation omitted); *see also FFE Transp. Servs. v. Fulgham*, 154 S.W.3d 84, 90-91 (Tex. 2004) (holding expert testimony required to establish standard of care in negligence action where "conduct at issue involves use of specialized equipment and techniques unfamiliar to the ordinary layperson." (citation omitted)). Whether a particular element necessitates expert

---

[4] As discussed more fully below, Plaintiff's DTPA and MMWA claims are dependent on her state-law breach of warranty allegations. (*See* Section III.B.5 & 6, *infra*). Plaintiff's "unjust enrichment" claim does not state a valid cause of action. (*See* Section III.B.7, *infra*). Even if it did, that equitable theory still would necessitate proof of a defect in the Product that led to Plaintiff's damages.

testimony is an issue of law. *Tamez*, 206 S.W.3d at 583; *Fulgham*, 154 S.W.3d at 89-90. But, in cases alleging injuries from a product, the mere occurrence of an unexpected event, malfunction, or failure is not enough to establish a defect. *See Ledesma*, 242 S.W.3d at 42; *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004). The Texas Supreme Court instead has "consistently required expert testimony and objective proof to support a jury finding that a product defect caused the plaintiff's condition." *Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338, 348 (Tex. 2015) (collecting cases).

In this case, Plaintiff's product defect theories are complex and require her to address liability questions that "involve matters beyond jurors' common understanding." *Tamez*, 206 S.W.3d at 583. Plaintiff seeks to prove issues including the standard of care for manufacturers and sellers of cosmetic hair dye products, that chemical components of the Product are unreasonably dangerous to consumers, that the FDA-mandated warnings are inadequate, that a safer alternative design existed, and that these purported "defects" in the Product caused her injuries. These are precisely the types of questions that involve specialized, technical, or scientific knowledge that courts applying Texas law have found require competent expert testimony. *See, e.g., Gharda USA*, 464 S.W.3d at 353 (concluding negligence and product defect theories related to contamination and combustion of chemicals required expert testimony); *Ramsey v. Caterpillar Inc.*, No. 12-16-00155-CV, 2017 Tex. App. LEXIS 3402, at *7-*9 (Tex. App.–Tyler Apr. 19, 2017, pet. denied) (concluding design and marketing defect claims involving tire rim assembly failed in the absence of expert testimony); *Perez v. Goodyear Tire & Rubber Co.*, No. 04-14-00620-CV, 2016 Tex. App. LEXIS 3774, at *28 (Tex. App.–San Antonio, Apr. 13, 2016, pet. denied) (holding expert testimony required to support marketing defect and negligent failure to warn claims); *Gillies*, 343 S.W.3d at 212 (requiring expert testimony to establish standard of care in negligent marketing case

involving surgical cutter); *Champion v. Great Dane L.P.*, 286 S.W.3d 533, 542-53 (Tex. App.–Houston [14th Dist.] 2009, no pet.) (concluding expert testimony required to prove elements of safer alternative design); *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 205 (Tex. App.–Texarkana 2008, no pet.) (holding expert testimony necessary to show proximate cause in product liability case based on negligence); *DeGrate v. Exec. Imprints, Inc.*, 261 S.W.3d 402, 409-412 (Tex. App.–Tyler 2008, no pet.) (concluding claims of negligence, design defect, and marketing defect in the manufacture and sale of a candle failed in absence of expert testimony); *Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d 107, 118 (Tex. App.–San Antonio 2004, pet. denied) (finding marketing defect claim failed where plaintiff presented no expert evidence regarding location and type of warning needed on tire's sidewall); *Revlon, Inc. v. Hampton*, 551 S.W.2d 121, 122-23 (Tex. Civ. App.–Beaumont 1977, no writ) (concluding product liability claim involving hair dye failed due to absence of expert testimony establishing specific defect).

### 2.   *Plaintiff has not identified testifying experts to support her claims.*

Plaintiff has not designated any expert to address these critical elements of her claims. This Court entered a Scheduling Order obligating Plaintiff to designate her testifying experts by June 11, 2020. (*See* Scheduling Order [Doc. 11] at ¶ 4). After seeking a short extension, Plaintiff served her Designation of Expert Witnesses on June 12, 2020. (*See* Doc. 19-2). But Plaintiff did not designate experts or produce any report addressing matters including the standard of care applicable to the design and marketing of cosmetic products, Defendants' purported breach of those standards, particular design or marketing defects in the Product, or a safer alternative design. (*See id.*); *see also* Fed. R. Civ. P. 26(a)(2). Instead, the <u>only</u> experts identified are two of Plaintiff's treating physicians, whom Plaintiff lists as "non-retained medical related experts" to testify about medical causation issues. (Doc. 19-2 at pp. 2-4).

This failure of proof is fatal to Plaintiff's claims. *See Wile*, 2020 U.S. Dist. LEXIS 82009, at *8-*9; *Andrews v. Dial Corp.*, 143 F. Supp. 3d at 529; *Samuell*, 2015 U.S. Dist. LEXIS 54495, at *9-*21. Indeed, other courts considering comparable claims of injury from consumer hair products – in Texas and elsewhere – have rejected those claims as a matter of law in the absence of corroborating expert testimony. *See, e.g., Chandler v. L'Oréal USA, Inc.*, 774 F. App'x 752, 753 (3d Cir. 2019) (applying Pennsylvania law); *Helene Curtis Indus., Inc. v. Pruitt*, 385 F.2d 841, 854-55 (5th Cir. 1967) (applying Texas law); *Moore v. P&G-Clairol, Inc.*, 781 F. Supp. 2d 694, 705-06 (N.D. Ill. 2011) (applying Illinois law); *Viscusi v. P&G*, No. 05-CV-01528(DLI)(LB), 2007 U.S. Dist. LEXIS 51307, at *29-*36 (E.D.N.Y. July 16, 2007) (applying New York law); *Smallwood v. Clairol, Inc.*, No. 03-cv-8394(SWK), 2005 U.S. Dist. LEXIS 2726, at *7 (S.D.N.Y. Feb. 18, 2005) (applying New York law); *Hampton*, 551 S.W.2d at 122-23 (applying Texas law); *Alberto-Culver Co. v. Morgan*, 444 S.W.2d 770, 775-76 (Tex. Civ. App.–Beaumont 1969, writ ref'd n.r.e.) (applying Texas law). The same result follows in this case. Summary judgment should be granted with respect to all of the claims asserted in Plaintiff's Complaint.

**B.      Plaintiff's Individual Causes of Action Also Fail for Other Reasons.**

Even if Plaintiff could meet her burden on some discrete cause of action without expert testimony, her claims fail as a matter of law for several additional and independent reasons.

**1.      *Plaintiff cannot establish the Product's labeling was deficient or that a deficiency in the warnings caused her injuries*.**

Plaintiff asserts that Defendants are liable for "deceptive labeling" because Plaintiff was not adequately made "aware of the risks and potential dangers" of the Product. (*See* Compl. at ¶¶ 149-160). Whether a failure-to-warn theory is grounded in negligence or strict liability, the burden is on the plaintiff to prove the injury resulted from a marketing defect. *See, e.g., Gillies*, 343 S.W.3d at 211. Plaintiff cannot make that showing.

Courts applying Texas law have determined that, "if a warning specifically mentions the circumstances complained of, then the warning is adequate as a matter of law." *Seifried v. Hygenic Corp.*, 410 S.W.3d 427, 433 (Tex. App.–Houston [1st Dist.] 2013, no pet.); *see also Blythe v. Bumbo Int'l Trust*, No. 6:12-CV-36, 2013 U.S. Dist. LEXIS 167754, at *9 (S.D. Tex. Nov. 26, 2013) (concluding warning on baby seat adequate as a matter of Texas law). *Carroll v. Harris Co.*, No. H-08-2970, 2011 U.S. Dist. LEXIS 64328, at *15-*16 (S.D. Tex. May 25, 2011) (holding summary judgment appropriate where warning on taser advised of risk at issue); *Bigelow v. New York Lighter Co., Inc.*, No. A-03-CA-340-LY, 2005 U.S. Dist. LEXIS 47871, at *79 (W.D. Tex. June 27, 2005) (holding warning on lighter that "specifically mentions the circumstances complained of" adequate as a matter of Texas law); *Dickerson v. Abbott Lab.*, No. 05-97-00070-CV, 1999 Tex. App. LEXIS 1307, at *7-*9 (Tex. App.–Dallas Feb. 25, 1999) (affirming summary judgment where insert warned of side effect suffered); *Rolen v. Burroughs Wellcome Co.*, 856 S.W.2d 607, 609 (Tex. App.–Waco 1993, writ denied) (same). That is precisely the case here.

The Product's packaging and Insert included robust cautionary labeling and safety warnings about the potential risk of allergic reaction and skin irritation. (*See* Section I.A, *supra*). They also included prominent advisories in several locations urging consumers to conduct a skin test at least 48 hours before each use. (*Id.*). Plaintiff admits that she applied the color without reading the Insert or conducting the skin test, and thereafter suffered the reaction that is the basis for this lawsuit. (Pl. Dep. at 28:17-29:17, 44:3-4, 47:5-17, App. 6-18). This is precisely the circumstance that the Product's packaging and Insert warned against. Because Defendants notified Plaintiff of the potential for injury if she used the Product in the manner described, the warning was adequate as a matter of Texas law. *See, e.g., Seifried*, 410 S.W.3d at 433-34; *Rolen*, 856 S.W.2d at 609. Indeed, other courts considering comparable warnings have held them sufficient.

*See Viscusi* 2007 U.S. Dist. LEXIS 51307, at *35 (dismissing failure-to-warn claims under New York law based on adequacy of cautionary information that accompanied product).

Summary judgment is particularly appropriate here given that Texas law *presumes* the adequacy of the Product's labeling. Chapter 82 of the Civil Practice & Remedies Code creates a rebuttable presumption that a manufacturer is not liable for an injury if the product's "labeling … complied with mandatory safety standards or regulations adopted and promulgated by the federal government … that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused the harm." Tex. Civ. Prac. Rem. Code Ann. § 82.008(a).

Labeling for so-called "coal-tar hair dyes" is governed by the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301, *et seq.*[5] In light of the potential risk of dermal injuries from such products, the FDCA states that hair dyes should be accompanied by an advisory stating: "Caution– This product contains ingredients which may cause skin irritation on certain individuals and a preliminary test according to accompanying directions should first be made." 21 U.S.C. § 361(a). The labeling also should include directions for such "preliminary testing." *Id*. There is no question the Product in this case complied with these provisions. (*See* Section I.A, *supra*). Consequently, the Product's labeling is presumed adequate. *See* Tex. Civ. Prac. Rem. Code Ann. § 82.008(a). Because Plaintiff cannot establish the facts necessary to overcome Chapter 82's presumption of non-liability, summary judgment is appropriate. *See, e.g., Shaw v. Trinity Highway Prods.*, 329 S.W.3d 914, 918 (Tex. App.–Dallas 2010, no pet.).

Finally, even assuming the Product's warnings were inadequate, Plaintiff cannot establish any purported deficiency caused her injuries. Texas law provides that, "[w]hen the warning that

---

[5] The term "coal tar" dates back to the time when coloring materials were byproducts of the coal industry. "Today, most are made from petroleum, but the original name is still used." *See* U.S. Food & Drug Administration, "Hair Dyes" (Mar. 3, 2019), *available at* https://www.fda.gov/cosmetics/cosmetic-products/hair-dyes#coal (last visited July 16, 2020).

would have prevented injury was ignored, there is no presumption that some additional warning would have been heeded." *General Motors Corp. v. Saenz ex rel. Saenz*, 873 S.W.2d 353, 360 (Tex. 1993). Quite simply, a consumer cannot be misled by warnings she did not read. *See id.* As set forth above, Plaintiff testified that she did not read the Insert's "Usage Advisory-Safety Warnings" that detailed the risk of dermal injury. Nor did she heed the Product's instructions to conduct a skin test. In these circumstances, Plaintiff cannot demonstrate the necessary causal link between the alleged warning inadequacy and her claimed injuries. *See Wright v. Ford Motor Co.*, 508 F.3d 263, 275 (5th Cir. 2007); *Blythe*, 2013 U.S. Dist. LEXIS 167754, at *12; *Bigelow*, 2005 U.S. Dist. LEXIS at *79-*80; *Saenz*, 873 S.W.2d at 361; *Ramsey v. Caterpillar Inc.*, No. 12-16-00155-CV, 2017 Tex. App. LEXIS 3402, *9-*10 (Tex. App.–Tyler Apr. 19, 2017, pet. denied); *Tidwell v. Terex Corp.*, No. 01-10-01119-CV, 2012 Tex. App. LEXIS 7724, at *24 (Tex. App.–Houston [1st Dist.] Aug. 30, 2012, no pet.); *Gillespie v. Century Prods. Co.*, 936 S.W.2d 50, 52-53 (Tex. App.–San Antonio 1996, no pet.); *also cf. Jones v. Coty Inc.*, 362 F. Supp. 3d 1182, 1205 (S.D. Ala. 2018) (rejecting failure-to-warn claims involving Clairol hair dye under Mississippi law where plaintiff did not heed skin test instructions).

### 2.   *Plaintiff has no evidence of a safer alternative design.*

Plaintiff claims the Product contained "inherent design defects" that caused her injuries. (*See* Compl. at ¶¶ 152, 156-57). To establish a defect in design, Plaintiff must prove a "safer alternative design" that "would have prevented or significantly reduced the risk of the claimant's personal injury … without substantially impairing the product's utility …." Tex. Civ. Prac. & Rem. Code Ann. § 82.005(b). Plaintiff cannot do so here. *See, e.g., Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 409 (5th Cir. 2016) (requiring expert testimony to establish design defect).

In support of her design defect claim, Plaintiff notes L'Oréal and other hair color manufacturers sell some hair dye products that do not contain PPD. (*See* Compl. at ¶¶ 62-63). But

"a plaintiff cannot prove design defect by claiming that defendant should have sold an entirely different product." *Brockert v. Wyeth Pharmaceuticals, Inc.*, 287 S.W.3d 760, 770 (Tex. App.–Houston [14th Dist.] 2009, no pet.) (citation omitted); *accord Cofresi v. Medtronic, Inc.*, No. 5:19-CV-1222-DAE, 2020 U.S. Dist. LEXIS 69444, at *9-*10 (W.D. Tex. Mar. 30, 2020). Moreover, Plaintiff has no evidence that "PPD-free" hair dyes are as effective as the Product, would not significantly impact the Product's utility, or that it actually would have prevented or reduced the risk of injury in this particular case. Because Plaintiff cannot establish the "safer alternative design" element imposed by Texas law, summary judgment is required.

### 3.     *Plaintiff's express warranty and fraud claims likewise fail.*

Plaintiff alleges Defendants breached "express warranties" made in marketing materials and advertisements. (*See* Compl. at ¶¶ 113-119). She also grounds her fraud claim in the same "marketing and advertising materials." (*Id.* at ¶ 141). To support her allegations, Plaintiff points to marketing statements such as: (1) the Product is "exclusively designed to transform dark hair with ultra-reflective tones – in just one easy step!," (2) that "Nutrisse lets you nourish your hair while you color", (3) the Product is "easy hair color", and (4) the Product will "Take your color to the next level." (*Id.* at ¶¶ 115, 143). But Texas law is clear this sort of non-specific "sales-talk" cannot serve as the basis for an enforceable warranty or fraud cause of action.

A seller creates an express warranty when he "makes an affirmation of fact or a promise to the purchaser, which relates to the sale and warrants a conformity to the affirmation as promised." *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 233 (Tex. App.–Houston [14th Dist.] 1996, writ denied) (citation omitted). But mere "puffery" does not give rise to an actionable warranty. *See id.* at 230; *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 361 (Tex. App.–Corpus Christi 1994, no writ). Nor is it actionable for purposes of a fraud claim. *Dowling v. NADW Mktg.*

*Inc.*, 631 S.W.2d 726, 729 (Tex. 1982). "Puffery," as opposed to a statement of fact, "is an expression of opinion by a seller not made as a representation of fact." *Id*. (citation omitted).

The statements Plaintiff cites in her Complaint are classic examples of "puffery" that do not give rise to a claim for express warranty or fraud. *See, e.g., MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 40 (Tex. 1998) (statements made in marketing materials that defendant would provide "qualified personnel and resources" and "the best health services possible" were not specific enough to constitute a warranty); *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 159 (Tex. 1995) (statements that building was "superb," "super fine," and "one of the finest little properties in the City of Austin" was mere puffing or opinion and not actionable); *accord Diamond Beach Owners Ass'n v. Stuart Dean Co.*, No. 3:18-CV-00173, 2017 U.S. Dist. LEXIS 219528, *9-*10 (S.D. Tex. Dec. 21, 2018) (statements regarding provision of "high performance" services and "quality work" did not create express warranty). Her claim thus fails.

Moreover, there is no evidence that Plaintiff considered – much less relied upon – any representations regarding the product. *See Wildman v. Medtronic*, 874 F.3d 862, 868 n.3 (5th Cir. 2017); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983). Plaintiff testified she initially started using the Product 30 years ago at the recommendation of her sister. (Pl. Dep. at 37:21-38:1, App. 10-11). She attested she was not influenced by the Product's advertising and continued to buy the Product only because she personally liked the way it did her hair. (*Id*. at 38:2-39:17, App. 11-12). There simply is no statement of material fact described in the Complaint that induced Plaintiff's purchase of the Product or proved to be false. *See LVI Facility Serv. v. Watson Rd. Holding Corp.*, No. A-12-CV-672-LY, 2013 U.S. Dist. LEXIS 142064, at *51-*52 (W.D. Tex. Oct. 1, 2013) (holding statements purportedly constituting express warranty were not "part of the basis for the bargain" as required by Texas law).

4.      *Plaintiff cannot establish the Product was "unmerchantable."*

Plaintiff asserts a breach of the implied warranty of merchantability. (*See* Compl. at ¶¶ 120-26). To establish that claim, Plaintiff must prove "the goods were unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy, *i.e.*, because of a defect." *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989). As explained above, Plaintiff has no expert testimony supporting a finding of defect. *Cf. Samuell*, 2015 U.S. Dist. LEXIS 54595, at *19-*20 (concluding implied warranty claim failed for lack of defect where it was "functionally identical" to non-viable strict liability allegations). But even assuming she could meet her burden on that element, she must also show proper use of the goods. *See Plas-Tex*, 772 S.W.2d at 444 & n.5; *Andrews*, 143 F. Supp. 3d at 528. Plaintiff cannot satisfy that requirement here. She conceded she did not read or follow the instructions to conduct a skin test (*see* Section I.C, *supra*), which could have prevented the injury about which she now complains. Such misuse bars her implied warranty claim. *Cf. Procter & Gamble Mfg. Co. v. Langley*, 422 S.W.2d 773, 780 (Tex. Civ. App.–Dallas 1967, writ dism'd) (holding plaintiff's failure to follow hair wave product instructions barred implied warranty claim).

5.      *Plaintiff's DTPA claims fail for the same reasons as her state-law warranty and fraud claims.*

Plaintiff's DTPA claim fails for the same reasons as her warranty and fraud claims. The DTPA creates a statutory cause of action and remedies for breach of an express or implied warranty that caused economic damages. *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(2). But the DTPA does not create any warranties; "[t]he warranties, both express and implied, actionable under the DTPA must be recognized by the common law or created by statute." *Parkway v. Woodruff*, 901 S.W.2d 434, 438 (Tex. 1995) (citation omitted). Because Plaintiff's state-law warranty and fraud theories fail for the reasons discussed above, her DTPA claims necessarily must fail as well. *See*

*id.*; *see also Shakeri v. ADT Sec. Servs*, 816 F.3d 283, 294-95 (5th Cir. 2016) (recognizing DTPA claim failed without viable state-law warranty action).

### 6. *Plaintiff has no viable MMWA claim.*

Plaintiff's claim under the MMWA, 15 U.S.C. § 2301, *et seq.*, likewise fails. First, the MMWA states it is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal law." 15 U.S.C. § 2311(d). As described above, the Product's safety warning information is governed by the FDCA. *See* 21 U.S.C. § 361(a).[6] Consequently, she cannot use the MMWA as a vehicle for her claims. Additionally, the Product is not subject to the MMWA's substantive obligations, which apply "only to warranties which pertain to consumer products actually costing the consumer more than $10 …." 15 U.S.C. § 2303(d); *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1061 (5th Cir. 1984). Plaintiff testified she purchased the Product for "$7 and something." (Pl. Dep. at 36:22-37:12, App. 9-10). Consequently, she has no valid claim for a substantive violation of the MMWA.

Even disregarding these provisions, "§ 2311(b)(2) of the MMWA prohibits claims arising from personal injury based solely on a breach of warranty, express or implied." *Boelens*, 748 F.2d at 1068. Because Plaintiff's allegations arise from personal injury, her claim is not cognizable under the MMWA. Furthermore, in the absence of personal injury damages, Plaintiff cannot meet the $50,000 amount-in-controversy requirement imposed by § 2310(d)(3)(B). *See* 15 U.S.C. § 2310(d)(3)(B); *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014); *Boelens*, 748 F.2d at 1069. Of the damages pled, the only amount that may be counted toward the amount-in-controversy requirement are her claimed damages for economic loss. *See Scarlott*, 771 F.3d at

---

[6] Similarly, to the extent Plaintiff challenges issues such as the size, prominence, and order of information in the Product's labeling, those labeling practices are governed by the Fair Packaging and Labeling Act. *See* 15 U.S.C. §§ 1451, *et seq.*; 21 C.F.R. §§ 700.3, *et seq.*

887-88; *Boelens*, 748 F.2d at 1069.  As discussed above, that amount (at most) is the "$7 and something" Plaintiff paid for the Product, which is inadequate under the MMWA.

Finally, to the extent Plaintiff seeks to incorporate her state-law warranty claims as the foundation for her MMWA cause of action, those claims fail for the reasons discussed above. The MMWA claim stands or falls with the state-law warranty allegations. *See, e.g., Gordon v. Sig Sauer, Inc.*, No. H-19-585, 2019 U.S. Dist. LEXIS 160584, *38 (S.D. Tex. Sept. 20, 2019); *Taliaferro v. Samsung Telecoms. Am., LLC*, No. 3:11-CV-1119-D, 2012 U.S. Dist. LEXIS 6221, at *36 (N.D. Tex. Jan. 19, 2012). The claim must be dismissed on this basis, as well.

### 7.    *Plaintiff has no separate cause of action for unjust enrichment.*

Finally, Plaintiff alleges a state-law claim for "unjust enrichment" based on her purchase of the Product. (*See* Compl. at ¶¶ 95-101). But such a complaint does not state a valid cause of action under Texas law. *See, e.g., Llort v. BMW of N. Am., LLC*, No. 1:20-CV-94-LY, 2020 U.S. Dist. LEXIS 96992, at *27 (W.D. Tex. June 2, 2020); *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 854-55 (S.D. Tex. 2018); *Ranieri v. Advocare Int'l, L.P.*, 336 F. Supp. 3d 701, 723 (N.D. Tex. 2018); *In re Life Partners Holdings, Inc. S'holder Derivative Litig.*, No. DR-11-CV-43-AM, 2015 U.S. Dist. LEXIS 168198, at *64-*65 (W.D. Tex. Nov. 9, 2015); *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009); *Argyle Indep. Sch. Dist. v. Wolf*, 234 S.W.3d 229, 246 (Tex. App.–Fort Worth, no pet.); *Walker v. Cotter Properties, Inc.*, 181 S.W.3d 895, 900 (Tex. App.–Dallas 2006, no pet.). That claim therefore also fails.

### IV.    CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court grant summary judgment in Defendants' favor and dismiss Plaintiff's claims in their entirety.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By:      /s/ J. Andrew Hutton
          Jeffrey R. Lilly
          State Bar No. 00787905
          jlilly@grsm.com
          J. Andrew Hutton
          State Bar No. 24012878
          ahutton@grsm.com

816 Congress Avenue, Suite 1510
Austin, Texas 78701
(512) 391-0197 Tel
(512) 391-0183 Fax

**COUNSEL FOR DEFENDANTS L'ORÉAL USA S/D, INC., GARNIER LLC, and WALGREEN CO.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are registered to accept electronic service of documents in this case will be notified through the court's CM/ECF system and the following were served by email on this the 17th day of July, 2020.

Rachel Ambler
AMBLER LAW, PLLC
511 N. Lincoln Avenue
Odessa, Texas 79761
(432) 203-0303
(888) 692-3331 fax
Rachel@RachelAmbler.com
*Attorney for Plaintiff Pamela Johnson*

                                        /s/ J. Andrew Hutton
                                        J. Andrew Hutton